**Stephen D. McCULLOUGH, Plaintiff–Appellant,**

v.

**BRANCH BANKING & TRUST COMPANY, Defendant–Appellee.**

No. 94–1235.

United States Court of Appeals, Fourth Circuit.

Argued July 19, 1994.

Decided Sept. 13, 1994.

**ARGUED:** Robert James Willis, Raleigh, NC, for appellant. Edward Katze, Constangy, Brooks & Smith, Atlanta, GA, for appellee.

Before WILKINSON and WILLIAMS, Circuit Judges, and SHEDD, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by published opinion. Judge WILLIAMS wrote the opinion, in which Judge WILKINSON and Judge SHEDD joined.

## OPINION

WILLIAMS, Circuit Judge:

Stephen D. McCullough brought this suit against Branch Banking and Trust Company (BB & T), claiming that he was terminated because of his handicap as a recovering alcoholic, in violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C.A. § 794 (West 1985 & Supp.1994). BB & T filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6) based on the statute of limitations, and to strike the requests for punitive and compensatory damages. The district court denied the motion to dismiss, holding that the action was not barred by the statute of limitations, but granted BB & T's motion to strike the requests for compensatory and punitive damages. BB & T next moved for summary judgment, arguing that it did not receive federal funds for the purposes of the Rehabilitation Act. The district court granted BB & T's motion for summary judgment on that ground, 844 F.Supp. 258.[1]

Both BB & T and McCullough appeal the respective determinations by the lower court. BB & T challenges the denial of its motion to dismiss on statute of limitation grounds, and McCullough challenges the grant of BB & T's motion to strike and motion for summary judgment. Agreeing with BB & T's argument, we hold that the district court erred in applying the North Carolina personal injury statute of limitations. We therefore affirm the district court's dismissal of McCullough's claim on this alternate ground, and find it unnecessary to resolve the remaining issues in this case.

---

1. In the opinion granting BB & T's motion for summary judgment, the district court also declined to exercise supplemental jurisdiction over McCullough's state law claims, and dismissed those claims without prejudice. *See* 28 U.S.C.A. § 1367 (West 1993). McCullough has not appealed that decision.

## I.

McCullough began working with BB & T in 1986, after he was fired from his previous employer, First Union Bank. That termination followed an automobile accident in which McCullough was convicted of hit and run with injury and driving under the influence of alcohol, and was sentenced to two years in jail.

McCullough's pattern of drinking and driving continued during his employment with BB & T. He was arrested at least four times for driving under the influence, and spent seven days in jail as a result of one of the arrests. Although he attempted to conceal these incidents from BB & T, BB & T learned about one arrest when a fellow employee read about it in the newspaper. BB & T claims that after they learned about this arrest, they asked McCullough to receive counseling and told him that further incidents of alcohol abuse would not be tolerated. According to BB & T, McCullough's subsequent alcohol-related arrests and lies to conceal his troubles caused BB & T to place McCullough on involuntary leave without pay, and then to terminate his employment, effective March 12, 1991.

On May 28, 1992, McCullough filed this lawsuit, alleging discriminatory discharge based on his alcoholism in violation of § 504 of the Rehabilitation Act. BB & T, in its ensuing motion to dismiss argued that, because the Rehabilitation Act has no statute of limitations, the district court must apply the most analogous state statute of limitations, which it believed was the North Carolina Handicapped Persons Protection Act, N.C. Gen.Stat. §§ 168A–1 to –12 (1987) (the North Carolina Act), which has a 180–day statute of limitations. N.C. Gen.Stat. § 168A–12. The district court rejected this argument, holding that the state personal injury statute, which has a limitations period of three years, was most analogous. *See* N.C. Gen.Stat. § 1–52(5) (1983). Because McCullough filed his cause of action less than three years from the date of his termination, the court held that the action was timely filed.

On appeal, BB & T argues that this court's decision in *Wolsky v. Medical College of Hampton Rds.*, 1 F.3d 222 (4th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 881, 127 L.Ed.2d 77 (1994), requires application of the statute of limitations found in the North Carolina Act. The issue of the applicable state statute of limitations is a question of law to be reviewed *de novo. See Meekins v. United Transp. Union,* 946 F.2d 1054, 1057 (4th Cir.1991) (citing *Parker v. Prudential Ins. Co.,* 900 F.2d 772, 776 (4th Cir.1990)).

## II.

The Rehabilitation Act, like many civil rights statutes, does not contain a specific limitations period. In such situations, Congress has directed the courts to select the most appropriate state statute of limitations to apply to the federal cause of action. 42 U.S.C.A. § 1988(a) (West Supp.1994). "When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985). This process involves a two part analysis. In choosing the applicable statute, the court should first select the state statute "most analogous" to the federal claim. *Id.* at 268, 105 S.Ct. at 1942. *See also Goodman v. Lukens Steel Co.,* 482 U.S. 656, 660, 107 S.Ct. 2617, 2620, 96 L.Ed.2d 572 (1987). The court should then consider whether application of that limitations period is consistent with the federal statute and its underlying policies. *Wilson,* 471 U.S. at 266–68, 105 S.Ct. at 1941–43.

Our first inquiry, therefore, is to determine which North Carolina statute is most analogous to a Rehabilitation Act claim. We are aware that other courts have concluded that claims under the Rehabilitation Act are best characterized as ones for personal injury and have, therefore, applied the state personal injury statute of limitations. *See Baker v. Board of Regents,* 991 F.2d 628, 632 (10th Cir.1993); *Bush v. Commonwealth Edison Co.,* 990 F.2d 928, 933 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1648, 128 L.Ed.2d 367 (1994); *Hickey v. Irving Indep. Sch. Dist.,* 976 F.2d 980, 983 (5th

Cir.1992); *Morse v. University of Vermont,* 973 F.2d 122, 127 (2d Cir.1992); *Hall v. Knott County Bd. of Educ.,* 941 F.2d 402, 407–08 (6th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 982, 117 L.Ed.2d 144 (1992).

This court, however, recently held that state personal injury statutes are not always the most analogous to Rehabilitation Act cases. In *Wolsky,* 1 F.3d at 224, we held that when a state has enacted a counterpart to the Rehabilitation Act, the statute of limitations of the state counterpart and not the personal injury statute was most analogous and therefore, the most appropriate limitations period. *Wolsky* involved a Rehabilitation Act claim arising in Virginia. Virginia has its own act protecting disabled individuals, the Virginia Rights of Persons with Disabilities Act, Va.Code Ann. §§ 51.5–40 to –46 (1991 & Supp.1994) (the Virginia Act). Because the Virginia Act was enacted with the same legislative purpose as the Rehabilitation Act, namely the protection against and redress for employment discrimination based on a person's handicap or disability, and reflected that purpose by tracking the language of the Rehabilitation Act and providing for similar protections, we determined that the Virginia Act was the most analogous statute, and applied its one-year statute of limitations. *See Wolsky* at 224. In *Wolsky,* we expressly declined to follow the decisions of other courts that had applied the personal injury statute of limitations to Rehabilitation Act cases, finding those cases distinguishable in that either no state counterpart to the Rehabilitation Act existed, or the state counterpart lacked a statute of limitations. *Id.* at 224–25.

Here, like Virginia, North Carolina has an act which protects disabled individuals from discrimination. The North Carolina Act was enacted with the purpose

> to encourage and enable all handicapped people to participate fully to the maximum extent of their abilities in the social and economic life of the State, to engage in remunerative employment, to use available public accommodations and public services, and to otherwise pursue their rights and privileges as inhabitants of this State.

N.C. Gen.Stat. § 168A–2. Similar to the Rehabilitation Act and the Virginia Act, the North Carolina Act specifically addresses employment discrimination on the basis of handicap or disability. N.C. Gen.Stat. § 168A–5. The North Carolina Act also prohibits such discrimination in public accommodations, service, and transportation. N.C. Gen.Stat. § 168A–6 to –8. Although the language of the North Carolina Act does not correspond to the Rehabilitation Act as precisely as the language of the Virginia Act, the North Carolina Act provides similar protections to disabled individuals.

Furthermore, the North Carolina legislature's intent to create a counterpart to the Rehabilitation Act is evidenced by § 168A–11(c) of the North Carolina Act, which provides:

> No court shall have jurisdiction over an action filed under this Chapter where the plaintiff has commenced federal judicial or administrative proceedings under Section 503 or Section 504 of the Vocational Rehabilitation Act of 1973, 29 U.S.C. §§ 793 and 794, as amended, or federal regulations promulgated thereunder, involving or arising out of the facts and circumstances involved in the alleged discriminatory practice under this Chapter. If such proceedings are commenced after a civil action has been commenced under this Chapter, the State court's jurisdiction over the civil action shall end and the action shall be forthwith dismissed.

In this section, the North Carolina Act specifically prohibits concurrent jurisdiction under it and the Rehabilitation Act, making it impossible for a claimant to recover for the same discrimination in both state and federal court. This section further supports the position that the North Carolina Act was intended as a state counterpart to the Rehabilitation Act, because clearly, if the North Carolina Act had been intended to cover claims different from those under the Rehabilitation Act, the North Carolina legislature would not have barred recovery under both Acts. We therefore agree with BB & T that, pursuant to our precedent in *Wolsky,* the North Carolina Act is the most analogous statute to the Rehabilitation Act.

We now consider whether application of the 180–day statute of limitations contained within the North Carolina Act is consistent with the federal policies underlying the Rehabilitation Act. *Wilson,* 471 U.S. at 266–67, 105 S.Ct. at 1942. The Virginia limitations period approved in *Wolsky* was one year, and McCullough argues that the shorter limitations period under the North Carolina Act is inconsistent with federal policies. However, a short statute of limitations is not uncommon among federal civil rights statutes, and it serves the goals of prompt notification to the employer and swift resolution of the conflict. For example, both the Civil Rights Act of 1991, 42 U.S.C.A. § 2000e–5(e)(1) (West Supp.1994), and the Americans with Disabilities Act (ADA), 42 U.S.C.A. § 12117(a) (West Supp.1994), require claimants to file a charge with the Equal Employment Opportunity Commission (EEOC) within 180 days of the alleged unlawful employment practice, unless within that period the claimant had initially instituted proceedings with a state or local agency, in which case the charge must be filed with the EEOC within 300 days. When the plaintiff fails to file such a complaint in a timely fashion with the EEOC, the claim is time-barred in federal court. *Butts v. New York Dep't of Hous. Preservation & Dev.,* 990 F.2d 1397, 1401 (2d Cir.1993). This filing requirement acts as a 180–day statute of limitations for many plaintiffs seeking relief under either the Civil Rights Act of 1991 or the ADA. *See Jarrell v. United States Postal Serv.,* 753 F.2d 1088, 1091 (D.C.Cir.1985) (holding that the EEOC filing requirements "are not jurisdictional prerequisites to suit, but are more 'like a statute of limitations' ") (quoting *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982)).

The federal policies behind the ADA and the Rehabilitation Act are similar, since both statutes were enacted, at least in part, to help disabled persons find and maintain employment. *Compare* 29 U.S.C.A. § 701(b)(2) (West Supp.1994) (one of the purposes of the Rehabilitation Act is "to ensure that the Federal Government plays a leadership role in promoting the employment of individuals with disabilities … and in assisting States and providers of services in fulfilling the aspirations of such individuals with disabilities for meaningful and gainful employment") *with* 42 U.S.C.A. § 12101(b)(1) (West Supp. 1994) (an objective of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities"). We consider it unlikely that Congress, while enacting a 180–day time-bar for an ADA claim, would not approve of the same limitations period under the Rehabilitation Act. Accordingly, we hold that application of the 180–day statute of limitations is not inconsistent with the federal policies behind the Rehabilitation Act.

McCullough, however, has identified several distinctions between the North Carolina Act and the Virginia Act, and argues that, pursuant to *Wolsky,* these disparities discount the analogies between the North Carolina Act and the Rehabilitation Act and dictate against applying the limitations period of the North Carolina Act. He argues that his claim is more analogous to a general wrongful discharge cause of action, *see* N.C. Gen.Stat. § 143–422.2 (1993), which for statute of limitations purposes is treated as a personal injury claim with a three-year limitations period. N.C. Gen.Stat. § 1–52(5).

McCullough cites the following distinctions between the North Carolina Act and the Virginia Act applied in *Wolsky:* 1) the North Carolina Act only provides for a bench trial, while the Virginia Act and the Rehabilitation Act allow jury trials; 2) the North Carolina Act only allows awards of injunctive relief and back pay, but the Virginia and Rehabilitation Acts provide for full compensatory and punitive damages; 3) the North Carolina Act, unlike the Virginia and Rehabilitation Acts, does not extend or base its coverage upon receipt of any state assistance; 4) the North Carolina Act requires the disabled person to apprise the employer, employment agency, labor organization, or place of public accommodation of his or her handicapping condition, make suggestions for possible accommodations, and cooperate in any evaluations of possible accommodations, which is not specifically required by the Virginia and the Rehabilitation Acts; and 5) the North Carolina Act, unlike the Virginia Act, does not specifically require that the scope of the Act's

protection be defined in a way that is consistent with the regulations imposed under the Rehabilitation Act.

This argument, however, begs the question of which North Carolina statute is most analogous to the Rehabilitation Act. The differences between the North Carolina Act and the Rehabilitation Act identified by McCullough do not, by themselves, magically tip the balance of similarities so as to make the general wrongful discharge provision more analogous to the Rehabilitation Act than the specific provisions of the North Carolina Act. It simply means that, in North Carolina, there is no perfect counterpart to the Rehabilitation Act, and we must determine which statute is more appropriate. To make this determination, we must look at both statutes in their entirety to ascertain which North Carolina law is most similar to the cause of action provided under the Rehabilitation Act. For example, in *Wilson*, 471 U.S. at 272–75, 105 S.Ct. at 1945–46, the Court considered the underlying causes of action created by 42 U.S.C. § 1983 (1988) and determined that, because such a broad variety of claims could be asserted under § 1983, it was more analogous to a general cause of action. Since all § 1983 actions involve alleged injuries to the personal civil rights of the claimants, the Court concluded that the cause of action can best be characterized as one for personal injury. *Id.* at 277–78, 105 S.Ct. at 1948. In *Wolsky*, 1 F.3d at 223, we reasoned that the Rehabilitation Act was not a general provision such as § 1983, but a more specifically tailored statute intended to redress discrimination against a defined class of individuals. We therefore concluded that the underlying cause of action of the Rehabilitation Act was more similar to the specific provisions of the Virginia Act, which also redressed discrimination against disabled individuals, than it was to the general personal injury provisions under Virginia law. *Id.* at 224. We also held in *Wolsky* that, although there were differences between the Virginia and the Rehabilitation Acts, "the distinctions between the two statutes [were] not significant enough to decline applying the statute of limitations as set forth in the Virginia Act." *Id.* at 225.

Here, both the North Carolina Act and the Rehabilitation Act redress discrimination against the same very specific group of persons. In contrast, the general wrongful discharge statute protects against a wide range of discrimination which, although including persons with disabilities, also encompasses many other classes of individuals. N.C. Gen. Stat. § 143–422.2. Based on our decision in *Wolsky*, we conclude that, because the Rehabilitation Act is a specific statute directed at protecting one class of persons, the specific North Carolina Act is more analogous to McCullough's claim than a general wrongful discharge statute. "It is a basic principle of statutory construction that when two statutes are in conflict, a specific statute closely applicable to the substance of the controversy at hand controls over a more generalized provision." *Farmer v. Employment Sec. Comm'n*, 4 F.3d 1274, 1284 (4th Cir.1993).[2] Accordingly, we reject McCullough's argument.

### III.

For the aforementioned reasons, we conclude that the North Carolina Act is the most analogous statute, and its 180–day limitations period should have been applied to McCullough's claim. Because McCullough filed his complaint more than a year after his termination, his lawsuit should have been dismissed as untimely. We therefore affirm the district court's dismissal of McCullough's claim on this alternate ground.

*AFFIRMED.*

---

2. By way of further illustration, we point to an analogous situation under North Carolina law. A North Carolina cause of action predicated "[u]pon a contract, obligation or liability arising out of a contract, express or implied," is subject to a three-year limitations period. N.C. Gen. Stat. § 1–52(1) (1983 & Supp.1993). However, when such a cause of action is targeted against a local unit of government, the general three-year limitations period gives way to a specific two-year limitations period provision created for such a contingency. N.C. Gen.Stat. § 1–53(1) (1983). It follows that, when faced with a conflict between a general provision and a specific provision, the specific provision controls.