51 F.3d 265
 6 NDLR P 212
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Lyn R. BROWN, Plaintiff-Appellant,
v.
The JOHNS HOPKINS HOSPITAL, Defendant-Appellee.
 No. 94-1875.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 1, 1995.
Decided March 31, 1995.
 
 ARGUED: W. Michel Pierson, Baltimore, MD, for appellant. Ronald Wayne Taylor, VENABLE, BAETJER & HOWARD, Baltimore, MD, for appellee. ON BRIEF: Timothy J. McEvoy, VENABLE, BAETJER & HOWARD, Baltimore, MD, for appellee.
 Before HAMILTON, LUTTIG, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Lyn R. Brown appeals an order of the United States District Court for the District of Maryland granting summary judgment in favor of Johns Hopkins Hospital (Hopkins) on Brown's claim under Sec. 504 of the Rehabilitation Act of 1973 (the Act). 29 U.S.C. Sec. 794 (1988). Because the district court properly concluded as a matter of law that Brown's sleep disorder did not constitute a disability as defined in the Rehabilitation Act, we affirm.
 
 I.
 
 2
 Brown is a registered nurse with a specialty in psychiatric nursing. She was employed by Hopkins for approximately eight years, from September 1982 until May 1990. During this period, she held a fulltime night shift position as Clinical Nurse II in "Meyer 4," Hopkins's in-patient psychiatric care unit. As a nurse in Meyer 4, Brown was a member of the unit's self-governing Professional Practice Model (PPM). The PPM nurses, seeking to provide continuous primary nursing care, committed themselves to "round-the-clock nursing coverage." (J.A. 39) To accomplish such comprehensive coverage, the nurses agreed periodically to work overtime and to be "on call" one shift per week. Failure to honor a request to work an on-call shift was deemed under the PPM an unexcused absence, subjecting the violator to disciplinary proceedings.
 
 
 3
 Beginning in 1988, Brown began to experience sleep disturbances and chronic insomnia, causing her to fall asleep while at work. It is undisputed, however, that Hopkins was unaware of any occasion on which Brown fell asleep on the job. In early 1990, Brown consulted an internist, Dr. Clifford Amend, who diagnosed her condition as a sleep disorder. On January 18, 1990, Dr. Amend recommended that Brown limit her nursing to eight hours per day. This restriction was approved by the Medical Advisor of Hopkins. Again, following a consultation on February 8, 1990, Dr. Amend restricted Brown's work schedule to eight hours per day through April 14, 1990. This restriction was similarly approved by Hopkins's Medical Advisor. Finally, Brown submitted a note dated April 6, 1990, from Dr. Amend stating that until June 30, 1990, she should not work more than eight hours per day or forty hours per week. In a note to her co-workers on April 14, 1990, Brown stated that her situation was temporary but that its duration would be based upon her progress rather than a finite period.
 
 
 4
 Until the April 6, 1990 extension request, Hopkins, by approval of the nurses on Meyer 4, accommodated Brown, limiting her nursing responsibilities to forty hours per week without overtime. However, following this final extension of her work restriction, Cathy Cohen, the head nurse of Meyer 4, informed Brown that some of her coworkers objected to her failure to fulfill the PPM's stated coverage responsibilities, as well as her express desire to avoid such responsibilities until at least June 30, 1990. On April 27, 1990, the members of the PPM, after meeting with Brown, voted to discontinue any further accommodation of Brown's work restrictions.
 
 
 5
 Thereafter, Hopkins gave Brown two options. Hopkins could either place Brown on sick leave from April 18, 1990 through June 30, 1990, the date her work restriction was to end, or, in the alternative, give her the option of contacting the recruitment office to pursue other job openings that might better accommodate her restrictions on a temporary basis. Brown rejected both these options and filed a grievance demanding that her sick leave be restored and that she be allowed to work in the Meyer 4 unit with her restrictions. During the grievance process, Hopkins offered Brown a temporary day nursing position in another department which she rejected because she perceived it as counter-productive to the treatment of her insomnia. On May 25, 1990, Hopkins partially granted Brown's grievance and reinstated her sick leave. However, it denied her demand that she be returned to the Meyer 4 unit with accommodations for her medical restriction. Based on her refusal to accept the daytime position offered to her, Brown was placed on a medical layoff status effective May 29, 1990.
 
 
 6
 After Hopkins placed her on layoff status, Brown filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission (EEOC) alleging that Hopkins had terminated her on the basis of her race. On March 31, 1992, the EEOC determined that Brown had not established a claim for racial discrimination. On April 16, 1993, instead of filing a Title VII lawsuit, Brown initiated this Sec. 504 action alleging discrimination on the basis of disability.
 
 
 7
 Following the close of discovery in the district court, Hopkins moved for summary judgment on the grounds that Brown was not disabled and thus failed to establish a prima facie case. By letter, Hopkins also raised before the district court the defense that the statute of limitations barred Brown's claim. After extensive briefing by the parties, the district court found that, although her claim was not time barred, Brown's sleeping disorder was temporary and did not prevent her from working as a nurse. Thus, as a matter of law, she could not prove that she was an "individual with a disability" as defined under the Act. Accordingly, the district court granted summary judgment in favor of Hopkins. Brown appeals.
 
 II.
 
 8
 We review de novo the district court's grant of summary judgment. Roe v. Doe, 28 F.3d 404, 406 (4th Cir.1994); Baber v. Hospital Corp. of America, 977 F.2d 872, 874-75 (4th Cir.1992). In conducting this review, we apply the same legal standards as the district court. Ramos v. Southern Md. Elec. Coop., Inc., 996 F.2d 52, 53 (4th Cir.1993). The district court should only grant a motion for summary judgment where there is no genuine dispute as to an issue of material fact, and the moving party is entitled to summary judgment as a matter of law. See Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). As this Court recently summarized:
 
 
 9
 The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. A mere scintilla of evidence supporting the case is insufficient. Id.
 
 
 10
 Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir.), cert. denied, 115 S.Ct. 67 (1994). All reasonable inferences drawn from the evidence must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). And yet, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " Id. at 587.
 
 
 11
 In order to establish a claim for discrimination based upon disability, Brown, as a threshold matter, must adduce evidence qualifying her as an "individual with a disability" as specified in the Act. 29 U.S.C.A. Sec. 794(a); Gupton v. Virginia, 14 F.3d 203, 205 (4th Cir.), cert. denied, 115 S.Ct. 59 (1994); Forrisi v. Bowen, 794 F.2d 931, 933 (4th Cir.1986). The Act defines a disabled individual as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C.A. Sec. 706(8)(B).[1] The regulations promulgated by the EEOC define with greater specificity the term "major life activities" as "functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. Sec. 1613.702(c).
 
 
 12
 Brown contends that she qualifies as a disabled individual within the meaning of the Act because she showed that her sleep disorder was a physical impairment which substantially limited one of her major life activities, working. We disagree. To establish that her sleep disorder substantially limited her ability to work, Brown must show "not merely that her [condition] made her'incapable of satisfying the singular demands of a particular job,' but that it'foreclose[d] generally [her opportunity to obtain] the type of employment involved.' " Gupton, 14 F.3d at 205 (quoting Forrisi, 794 F.2d at 935). In Forrisi, for example, a utility systems repairer and operator whose particular job required him to climb stairways and ladders for emergency and routine maintenance claimed that his acrophobia prevented him from discharging the required duties of his particular job and, thus, substantially limited his ability to work. 794 F.2d at 934. We rejected Forrisi's claim because, although his fear of heights made him unsuited to a position at a particular plant, he demonstrated no difficulty in obtaining another position in the same field. Id. at 935.
 
 
 13
 Similarly, in Gupton, a highway utilities specialist employed by the Virginia Department of Transportation (VDOT) claimed that her allergy to tobacco smoke made her unable to continue in her position at VDOT's Fair Ridge office. 14 F.3d at 205. Because Gupton failed to present evidence that her allergy foreclosed her generally from obtaining jobs in her field, however, we rejected her claim that an allergy to tobacco smoke substantially limited her ability to work. Id. Thus, we concluded that Gupton failed to show that she was an individual with a disability for the purposes of the Act. Id. at 205-06.[2]
 
 
 14
 In order to avoid summary judgment on her disability claim, Brown must, as a threshold matter, offer more than a mere scintilla of evidence raising a triable issue of fact. Anderson, 477 U.S. at 248. Brown, like the claimants in Forrisi and Gupton, failed to make a showing that her inability to perform the requirements of a particular job foreclosed her from obtaining other employment in her area. The record reflects that Brown's work restrictions result from a sleep disorder which preclude her from meeting the availability and overtime requirements of Meyer 4; however, these facts alone raise no material fact upon which a reasonable jury would conclude that her insomnia foreclosed her from obtaining other jobs in her field. Indeed, the record reflects that, following her layoff from Hopkins, Brown worked as a psychiatric nurse at several institutions.[3] Furthermore, in at least two job applications submitted following her departure from Hopkins, Brown stated that she suffered from no chronic illness or disability. Finally, in her "Medical Lay Off Appeal Statement" dated July 17, 1990, Brown characterized her insomnia as a "temporary illness that did not restrict or limit [her] work performance in any way." (J.A. 29.) Given our de novo review of the record as a whole, we conclude that a rational trier of fact could not find for Brown. We therefore discern no genuine issue for trial. Matsushita, 475 U.S. at 587-88.
 
 III.
 
 15
 For the reasons discussed above, we affirm the order of the district court granting summary judgment against Brown on her Rehabilitation Act claim.[4]
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 Prior to the grant of summary judgment but after the events upon which Ms. Brown relies in asserting her claim, Congress amended Sec. 794 replacing the term "handicap" with "disability." Pub.L. No. 102-569. The two terms, however, are defined identically. 28 U.S.C.A. Sec. 706(8)(B) (West 1985 & Supp.1994)
 
 
 [2]
 We further noted in Gupton that the other circuits addressing the issue have almost unanimously agreed with our holding in Forrisi that a plaintiff must do more than show that the impairment barred her from one particular job in order to establish that she has an impairment that substantially limits her ability to work. Gupton, 14 F.3d at 205 n. 3. Since our decision in Gupton, the Tenth and Second Circuits have reaffirmed their adherence to this principle. Bolton v. Scrivner, Inc., 36 F.3d 939, 942-43 (10th Cir.1994) (citing Welsh v. City of Tulsa, 977 F.2d 1415, 1419 (10th Cir.1992), for the proposition that an ADA plaintiff bears the same burden as an individual suing under the Rehabilitation Act of showing that the impairment at issue barred him from more than one particular job), cert. denied, 63 U.S.L.W. 3625 (1995); HeilWeil v. Mount Sinai Hospital, 32 F.3d 718, 723 (2nd Cir.1994) ("[A] person found unsuitable for a particular position has not thereby demonstrated an impairment substantially limiting such person's major life activity of working."), cert. denied, 63 U.S.L.W. 3625 (1995)
 
 
 [3]
 The record further reflects that during the period when Brown was working a restricted forty hour per week schedule at Hopkins, and continuing through 1992, she held a two hour per week position as a counselor at Weight Watchers. This admission made by Brown in an affidavit further undermines her contention that her sleep disorder prevented her from working overtime
 
 
 [4]
 Hopkins contends alternatively that the temporary nature of Brown's sleep disorder necessitates summary judgment on the threshold issue of Brown's substantial limitation. Hopkins, citing our recent holdings in McCullough v. Branch Banking & Trust, 35 F.3d 127 (4th Cir.1994), and Wolsky v. Medical College of Hampden Roads, 1 F.3d 222 (4th Cir.1993), further urges that summary judgment was appropriate on the grounds that Brown's claim was barred by the statute of limitations contained in Maryland's anti-discrimination statute. Given our holding today, we do not address Hopkins's asserted alternative grounds for affirming the judgment of the district court