David SCHALK

v.

ASSOCIATED ANESTHESIOLOGY PRACTICE

No. CIV. CCB–03–3393.

United States District Court, D. Maryland.

April 27, 2004.

Stephen B. Lebau, Anna L. Jefferson, Lebau and Neuworth LLC, Baltimore, MD, Richard P. Neuworth, Lebau and Neuworth PA, Baltimore, MD, for Plaintiff.

Kara Kathleen Mather, Squire Sanders and Dempsey LLP, Washington, DC, for Defendant.

## MEMORANDUM

BLAKE, District Judge.

Plaintiff David Schalk brings this action against Defendant Associated Anesthesiology Practice ("AAP") for alleged violations of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. Schalk claims that AAP refused to hire him solely because of his substance abuse problem. Pending before the court is AAP's motion to dismiss. For the reasons discussed below, the motion will be denied.

### I. FACTS AND PROCEDURAL HISTORY

Schalk is a board certified and approved anesthesiologist. He has been licensed to practice medicine in Maryland for approximately 14 years. AAP is a professional corporation made up of physicians specializing in anesthesiology. Prior to 1989, Schalk had hospital privileges as an anesthesiologist at Peninsula Regional Medical Center ("the Hospital") in Salisbury, Maryland. In 1989, the Hospital entered into a contract with AAP in which it gave AAP exclusive rights to provide anesthesia services in the Hospital. Because the Hospital did not want to prevent anesthesiologists with existing privileges from working, it required AAP to enter into subcontract agreements with these doctors. Schalk was one such anesthesiologist.

Schalk's arrangement with AAP is documented in two contracts—one entered in 1992, and one entered in 1998.[1] The 1992 contract was entitled "Subcontract Agreement for Professional Anesthesiology Services," and the 1998 contract was entitled "Independent Contractor/Subcontract Agreement." Both these contracts specifically stated that Schalk would be deemed an independent contractor of AAP. Moreover, pursuant to these contracts, Schalk billed his patients directly for his services, maintained his own contracts with insurance companies, maintained his own medical and financial records for his patients, and paid for his own malpractice insurance. Schalk did not receive any benefits from AAP, nor did AAP provide him with any equipment or administrative support. Nevertheless, the agreements called for a certain degree of coordination among Schalk, AAP, and the Hospital with respect to the provision of anesthesiology services.

---

1. There is no evidence regarding Schalk's relationship with AAP prior to 1992, but it was likely similar to the arrangement between the parties from 1992 to 2000. *See* discussion *infra*.

On or about September 20, 2000, AAP was informed by the Hospital that Schalk would be taking medical leave for at least one month, effective that day.[2] This was the first and only notice AAP received regarding Schalk's leave; he never asked or received approval for leave from AAP directly. Schalk's leave was for the purpose of seeking treatment for substance abuse. He successfully completed an in-patient treatment program, and in January 2002, was informed that he was capable of returning to the practice of anesthesiology. Around this time, Schalk saw two different internet advertisements that AAP had placed seeking anesthesiologists. The job description of the position offered by AAP was as follows:

Superb opportunity to join a single specialty group practice located on the Eastern Shore of Maryland. Two year partnership tract [sic] opportunity. Group consists of 11 physicians and 5 CRNA's. Call 1–11 with day off after call. Group has exclusive contract with Level 3 hospital/trauma center. Physicians do 90% of their own cases and run 3–4 rooms at one time. Group in process of building a brand new state of the art surgery center. If you are looking for a great location and a superb opportunity this is the practice.

On January 13, 2002, Schalk wrote a letter to Michael Stivelman, President of AAP. This was apparently the first time that AAP had heard from Schalk since his sudden departure in September 2000. The letter read as follows:

I have been informed by Dr. Lawrence [Vice–President of Medical Affairs for the Hospital] that since my leave of absence exceeded one year that I need to reapply for privileges through your group. I have completed extensive treatment for my disabilities and have been informed that I may return to the practice of anesthesia. I am therefor [sic] requesting that I may apply for privileges under your auspices. Please contact me as to when we can discuss this matter.

Stivelman responded to Schalk in a letter dated January 23, 2002, in which he wrote:

In response to your letter dated 13 January 2002, we are not prepared to offer you a position with AAP. If you wish to reapply for privileges, that request should be addressed to the Hospital Medical Staff. If you have any further questions that I may be able to answer, feel free to contact me.

Then, on March 5, 2002, Schalk wrote back to Stivelman. This second letter read:

I just wanted to clarify our prior correspondence. My past communications to you were for the purpose of obtaining work with AAP and not for hospital privileges. I am aware that AAP has been searching for doctors to work for it.

By letter dated January 23rd, you advised me that AAP was "not prepared to offer me a position." I ask that you reconsider this position as I am qualified and able to return to work, as explained and documented previously.

It appears that AAP did not respond to Schalk's second letter. In Stivelman's affidavit, he stated that the reasons AAP did not wish to reestablish a relationship with Schalk were his sudden disappearance, failure to appear to work for fifteen

2. Schalk's 1998 contract with AAP expired on December 31, 1999. AAP provided Schalk with a new agreement to be effective January 1, 2000, but he refused to sign it. Thus, after the expiration of the 1998 contract, the parties continued to operate under the same terms and conditions of that contract.

months, and prior unsatisfactory performance.

Subsequently, Schalk filed a charge of discrimination with the Equal Employment Opportunity Commission. He alleged that AAP failed to hire him because of his disability, in violation of the ADA. In August 2003, the EEOC delivered its determination. Preliminarily, it found that Schalk and AAP had an employer-employee relationship prior to Schalk's leave, and therefore that it had jurisdiction over the charge. It then held that there was reasonable cause to believe that AAP violated the ADA by basing its decision not to hire Schalk on his status as a recovered drug addict.

On November 24, 2003, Schalk filed a two-count complaint against AAP in this court, alleging violations of the ADA and the Rehabilitation Act.[3] AAP filed a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), claiming that Schalk was not an employee of AAP, but an independent contractor, and as such, could not raise a claim under the ADA or the Rehabilitation Act. In his opposition, Schalk argued that his status prior to his medical leave was irrelevant; what mattered was that after completing his treatment, he was a job applicant seeking a position as an employee of AAP. Moreover, he claimed that he need not establish an employer-employee relationship to state a claim under the Rehabilitation Act. Finally, he argued that discovery was necessary to fully develop the facts surrounding these events, and in support of this argument, filed a Rule 56(f) affidavit outlining the discovery he would need to prove his claims. In its reply, AAP, in addition to responding to Schalk's points, raised the new argument that Schalk's Rehabilitation Act claim was barred by the statute of limitations. This court permitted Schalk to file a surreply to respond to that argument.

## II. ADA CLAIM

AAP has filed a motion to dismiss the ADA claim for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1). There are two ways in which to present this kind of motion. First, a defendant may claim that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based. *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). In that case, all the facts alleged in the complaint are assumed to be true and the plaintiff is essentially given the same procedural protection as he would have under a Rule 12(b)(6) motion for failure to state a claim on which relief may be granted. *Id.* Second, a defendant may claim that the jurisdictional allegations of the complaint are sufficient, but are not true. *Id.* In that event, the court may go beyond the allegations of the complaint and consider evidence by affidavit, depositions, or live testimony without converting the proceeding to one for summary judgment. *Id.* The court must then weigh all the evidence to determine if there is jurisdiction. *Id.*

This case involves the second kind of motion. AAP does not argue that Schalk's complaint is lacking on its face. Schalk clearly raises a claim under the ADA, and he asserts facts that, if proven, would entitle him to relief. The ADA prohibits discrimination against a qualified individual with a disability because of the individual's disability in regard to job applications procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of em-

---

**3.** It is undisputed that AAP receives funding from the federal government, and therefore falls within the purview of the Rehabilitation Act.

ployment. 42 U.S.C. § 12112(a). "Discrimination" includes limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such an applicant or employee because of the applicant or employee's disability. § 12112(b)(1). In his complaint, Schalk states that he suffered from a disability of which AAP was aware, that he applied for a job with AAP, that he was qualified to perform the job and had done so successfully in the past, and that AAP still refused to hire him solely because of his disability. If Schalk were to prove all of these elements, he would be able to recover under the statutes.

Thus, instead of challenging the sufficiency of the complaint's allegations, AAP challenges the allegations' veracity. Specifically, it claims that contrary to his assertions, Schalk was neither an "employee" nor a "job applicant" under the ADA, and accordingly, that the court does not have jurisdiction over his claims. The ADA definition of "employee" is "an individual employed by an employer." 42 U.S.C. § 12111(4).[4] When Congress uses the word "employee" in a statute without otherwise defining it, courts presume that Congress intended to describe the traditional master-servant relationship as understood by common law agency doctrine. *Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 259 (4th Cir.1997). The agency law analysis involves the weighing of several factors to determine whether a person is an employee or independent contractor, including, *inter alia:* (1) the hiring party's right to control the manner and means by which the work is accomplished; (2) the skill required; (3) the source of the instrumentalities and tools; (4) the location of the work; (5) the duration of the relationship between the parties; (6) the extent of the hired party's discretion over when and how long to work; (7) the method of payment; (8) the provision of employee benefits; and (9) the tax treatment of the hired party. *Id.* at 260.

AAP argues that the balance of these factors weighs against a finding that Schalk was an "employee" of AAP, and, accordingly, against jurisdiction over his claim. Similarly, AAP claims it could not have reasonably believed Schalk to be a "job applicant" since he had always been an independent contractor in the past.[5] Schalk counters these arguments by pointing to AAP's advertisements for new doctors and his letters to AAP. He claims that this evidence demonstrates that regardless of his past relationship with AAP, when he wrote to AAP in early 2002, he was seeking a position as an employee.

■ Courts generally are permitted to weigh the evidence in a 12(b)(1) motion and make a decision regarding jurisdiction. *Adams,* 697 F.2d at 1219. Certain kinds of cases, however, have been identified as inappropriate for determination at the jurisdictional stage. These are cases where the jurisdictional facts are intertwined with the facts that are central to the merits of the dispute. *Id.* Under these circumstances, the proper course of action is to find that jurisdiction exists and resolve the entire factual dispute by a proceeding

**4.** An "employer" is defined by the ADA as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person." 42 U.S.C. § 12111(5)(A). It is undisputed that AAP was an "employer" under the ADA.

**5.** The ADA does not actually define "job applicant," but because the statute only applies to employees, logically a "job applicant" must be a person seeking a position as an employee, and not as an independent contractor.

on the merits. *United States v. North Carolina*, 180 F.3d 574, 580–81 (4th Cir. 1999); *Adams*, 697 F.2d at 1219; *Bryant v. Clevelands, Inc.*, 193 F.R.D. 486, 488 (E.D.Va.2000); *McGinnis v. Southeast Anesthesia Assocs.*, 161 F.R.D. 41, 43 (W.D.N.C.1995); *Equal Employment Opportunity Commission v. Alford*, 142 F.R.D. 283, 289 (E.D.Va.1992); *see also Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946) ("Jurisdiction, therefore, is not defeated...by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.... [T]he failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction"). There are only two situations in which it would be appropriate for the court to dismiss an action for want of jurisdiction when the facts relevant to jurisdiction and to the merits are intertwined. *Bell*, 327 U.S. at 682, 66 S.Ct. 773. The first is where the alleged claim under a federal statute clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction, and the second is where the claim is wholly insubstantial and frivolous. *Id.* at 682–83, 66 S.Ct. 773.

■ Several cases have addressed the question of "employer" or "employee" status in the context of Title VII, which defines these terms the same way as the ADA. *See* 42 U.S.C. § 2000e–2. When an issue of "employer" status was presented, the court declined to dismiss for lack of subject matter jurisdiction, finding that whether a defendant is an "employer" also relates to the threshold substantive question of whether the defendant has a duty under Title VII. *See Bryant*, 193 F.R.D. at 489; *Alford*, 142 F.R.D. at 289. In another case, the court found that whether a plaintiff was an "employee" under Title VII was also an element of a Title VII claim, and, accordingly, declined to dismiss on a 12(b)(1) motion. *McGinnis*, 161 F.R.D. at 44. The identical definitions of "employer" and "employee" in Title VII and the ADA make these cases persuasive authority with respect to the issue raised by AAP.

As explained *supra*, the disputed question in this case is whether Schalk was an "employee" or "job applicant" under the ADA. This issue relates not only to jurisdiction, but also to the merits of the case—namely, whether AAP has a duty to Schalk to follow the ADA. This is so because independent contractors are not "employees" covered by the statute, nor are those seeking to become independent contractors "job applicants" covered by the statute. Thus, these two groups are owed no duty by an employer under the ADA. In these circumstances, because the facts relevant to jurisdiction and to the merits are intertwined, it is inappropriate to resolve the question on a 12(b)(1) motion.[6] Moreover,

**6.** Most of the cases cited by AAP to support its position that dismissal would be appropriate at this stage of the case are inapposite. In *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir.1999), the district court initially denied the defendant's 12(b)(1) motion; only after discovery and a renewed motion for summary judgment did the court determine there was no subject matter jurisdiction and grant summary judgment in the defendant's favor. In *Willey v. Ward*, 197 F.Supp.2d 384, 388 (D.Md.2002), the case was dismissed as a matter of law on a 12(b)(6) motion for failure to state a claim, not on a 12(b)(1) motion for lack of subject matter jurisdiction. A 12(b)(1) motion was at issue in *White v. CMA Constr. Co.*, 947 F.Supp. 231, 234 (E.D.Va.1996), but in that case the court denied the motion because the facts presented by the defendant were so ambiguous that there was no credible dispute. The only case cited by AAP where the circumstances were similar to this case is an unpublished opinion—*Hager v. First Virginia Banks, Inc.*, 2002 WL 57249, at *4 (W.D.Va. Jan.10, 2002)—which involves the question whether

the exceptions set forth in *Bell* for immaterial or frivolous claims do not apply here. Therefore, the ADA claim should survive and this dispute should be resolved on the merits.[7]

## III. REHABILITATION ACT CLAIM

AAP argues that Schalk's Rehabilitation Act claim also should be dismissed under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. Schalk brings this claim under Section 504 of the Rehabilitation Act ("the Act"), which states, "No otherwise qualified individual with a disability...shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).[8] The Act further states that the standards used to determine whether section 504 has been violated shall be the standards applied under the ADA. § 794(d). Although the Act nowhere mentions "employees" or "job applicants," AAP argues that an employer-employee relationship is required, and that because Schalk is not an employee or a job applicant under the ADA, his Rehabilitation Act claim should also be dismissed.

Whether the Act requires an employer-employee relationship need not be resolved at this time. If such a relationship is necessary to bring a claim under the Act, then the question of Schalk's status would be relevant both to jurisdiction and to the merits of the claim, as it was with the ADA claim. In that case, my holding from Part II. *supra* would apply here as well. If, on the other hand, the Rehabilitation Act does not require an employer-employee relationship, then AAP's arguments regarding jurisdiction would have no merit.

■ AAP also claims that Schalk's Rehabilitation Act claim should be dismissed because it is barred by the statute of limitations. The Act does not contain a specific limitations period. Where Congress has not established a time limitation for a federal cause of action, the court must adopt a local time limitation if it is not inconsistent with federal law or policy to do so. *Wilson v. Garcia,* 471 U.S. 261, 266, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). This is a two-step process: first, the court must select the state statute that is most analogous to the federal claim, and then it must consider whether application of that limitations period is consistent with the federal statute and its underlying policies. *McCullough v. Branch Banking & Trust Co.,* 35 F.3d 127, 129 (4th Cir.1994).

AAP argues that the appropriate Maryland statute to apply in this case is Md. Code Ann. Art. 49B. This statute makes it unlawful for an owner or operator of a

---

the defendant was an "employer" under the ADA. That case, however, while citing *Adams,* fails to discuss the rules set out therein with respect to disputes relevant to jurisdiction and the merits. *Id.* Moreover, discovery apparently had been taken before the ruling was made in *Hager,* as there is a reference to deposition testimony. *Id.* at *5.

7. Schalk further argues in opposition to AAP's motion that an employer-employee relationship is not necessary under the ADA if the standing doctrine set forth in *Sibley Mem'l Hosp. v. Wilson,* 488 F.2d 1338 (D.C.Cir.1973) applies. Because I have concluded that it is inappropriate to resolve the question of Schalk's employee status at the jurisdictional stage, I need not address the application of *Sibley* at this time.

8. AAP argues that Schalk's complaint also attempts to state claims under sections 501 and 503 of the Act, 29 U.S.C. §§ 791, 793, and that these claims fail for different reasons. In his opposition, however, Schalk does not even address sections 501 and 503, focusing his argument solely on section 504. Thus, I will assume that if he had at one time wished to bring claims under the other sections, he has now abandoned them.

place of public accommodation, because of a person's physical or mental handicap, to refuse, withhold from, or deny to such person any of the accommodations, advantages, facilities, or privileges of the accommodations. Art. 49B § 5(b). It also provides a six-month statute of limitations for a person to file a complaint for an alleged violation of the statute. Art. 49B § 9A(a). In this case, the alleged discrimination occurred in the period from January to March 2002, during which time Schalk wrote letters to and was denied employment by AAP. Schalk did not file this case, however, until November 2003, almost two years later. AAP argues that Art. 49B is the most analogous statute to the Act, and when applied, bars Schalk's claim, which was not filed within the 6–month limitations period.

AAP relies on *McCullough, supra,* and *Wolsky v. Med. Coll. of Hampton Roads,* 1 F.3d 222 (4th Cir.1993) to support its argument. However, while both of these cases apply relatively short statutes of limitations, neither of them addresses Maryland law. In *McCullough,* the court applied the 180–day statute of limitations provided in a North Carolina statute prohibiting disability discrimination, and therefore barred the plaintiff's Rehabilitation Act claim. 35 F.3d at 130. Similarly, the *Wolsky* court applied the one-year statute of limitations in Virginia's Rights of Persons with Disabilities Act, which was modeled after and is almost identical to the Rehabilitation Act. 1 F.3d at 224. The only case AAP cites that applies Md.Code Ann. Art. 49B to a Rehabilitation Act claim is *Carrozza v. Howard County, Maryland,* 847 F.Supp. 365, 367 (D.Md.1994). *Carrozza* merely cites to *Wolsky,* however, without further explaining why the proper limitations peri-

od is the one set forth in Art. 49B § 9A(a). *Id.*

In *Kohler v. Shenasky,* 914 F.Supp. 1206 (D.Md.1995), another judge of this court expressly distinguished *McCullough* and *Wolsky* and found that Art. 49B was not the Maryland law most analogous to the Act, and, accordingly, that its six-month statute of limitations should not apply. The court focused on the fact that, unlike the North Carolina and Virginia statutes in the other two cases, "there is no indication that Maryland intended to create a statute providing the same extensive rights and protections as the federal acts, or an exclusive state remedy for such discrimination." 914 F.Supp. at 1211 (citations omitted).

I agree with the reasoning in *Kohler* and hold that the statute of limitations for Rehabilitation Act claims in Maryland is three years, rather than six months. Schalk's claim filed in November 2003 was timely. *See also Ross v. Bd. of Educ. of Prince George's County,* 195 F.Supp.2d 730, 735 n. 2 (D.Md.2002) (following *Kohler* and applying three-year statute of limitations to Rehabilitation Act claim); *Huber v. Howard County, Maryland,* 849 F.Supp. 407, 415 (D.Md.1994) (citing *Burnett* and applying three-year statute of limitations to Rehabilitation Act claim); *Jones v. Frederick County Bd. of Educ.,* 689 F.Supp. 535, 539 (D.Md.1988) (same).

In conclusion, neither Schalk's ADA claim nor his Rehabilitation Act claim should be dismissed at this time for lack of subject matter jurisdiction. The factual issues relating to jurisdiction over these claims also involve the merits of the claims, making it more appropriate for these issues to be decided on the merits. Therefore, AAP's motion to dismiss under Rule 12(b)(1) will be denied.[9] In addition,

9. Schalk has filed a Fed.R.Civ.P. 56(f) affidavit to request discovery in this matter. Be-

cause I am denying the motion to dismiss, the case will proceed to discovery, and here is no

Schalk's Rehabilitation Act claim was timely filed and should not be barred by the statute of limitations.

A separate order follows.

## ORDER

For the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that:

Defendant AAP's motion to dismiss (docket no. 7) is **Denied.**

need for a separate ruling as to the applicability of Rule 56(f).