56 F.3d 61
 4 A.D. Cases 864
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John HUBER, Plaintiff-Appellant,
v.
HOWARD COUNTY, MARYLAND, Defendant-Appellee.
 No. 94-1651.
 United States Court of Appeals, Fourth Circuit.
 Argued: April 5, 1995
Decided: May 24, 1995
 
 ARGUED: Francis Joseph Collins, KAHN, SMITH & COLLINS, P.A., Baltimore, MD, for Appellant. Richard Edwin Basehoar, Senior Assistant County Solicitor, Ellicott City, MD, for Appellee. ON BRIEF: Barbara M. Cook, Howard County Solicitor, Louis P. Ruzzi, Senior Assistant County Solicitor, Ellicott City, MD, for Appellee.
 Before RUSSELL, and LUTTIG, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Plaintiff-Appellant John Huber appeals the district court's decision granting summary judgment to Defendant-Appellee Howard County, Maryland, on Huber's claim that the County unlawfully discriminated against him under Sec. 504 of the Rehabilitation Act, 29 U.S.C. Sec. 794, when the County terminated him from his position as a firefighter recruit because he suffers from asthma. We affirm.
 
 I.
 
 2
 The district court's opinion contains a thorough discussion of the undisputed facts in this case. See Huber v. Howard County, Md., 849 F.Supp. 407, 409-11 (D. Md.1994). We restate below the important facts relevant to this appeal.
 
 
 3
 Huber applied and was accepted for membership in the Ellicott City Volunteer Fireman's Association, Inc., in March 1986, and in the West Friendship Volunteer Fireman's Association in February 1987. Both of these associations are located in Howard County. Huber performed ably as a volunteer firefighter, and he successfully completed several training courses and became certified as a cardiac rescue technician (CRT).
 
 
 4
 On March 20, 1989, Huber applied for the full-time paid position of Firefighter/CRT Recruit with the Howard County Department of Fire and Rescue Services (DFRS). On November 11, 1989, as part of an individual medical examination required of all recruits, Huber reported to a County physician, Dr. Antonio D. Talusan, that he had a history of "childhood" asthma, that he used an inhaler known as a bronchodilator, and that he had experienced an asthmatic episode in 1986. Huber did not report that he had experienced an asthmatic episode requiring hospital treatment on May 25, 1989. Dr. Talusan recommended Huber for hire, and Huber began his training as a firefighter recruit on February 12, 1990.
 
 
 5
 As a recruit, Huber was required to participate in a physical fitness training program in the fire academy. Male recruits were expected to run 1.5 miles in under 13 minutes. While a recruit's failure to satisfy the entry level standards in any one exercise did not necessarily disqualify the recruit, all recruits were required to pass a final agility test in order to complete the training program.
 
 
 6
 Throughout this physical training program, Huber had difficulty performing some of the running exercises. On February 14, 1990, Huber failed to complete the 1.5 mile run and needed to use an inhaler to aid his breathing during the exercise. The next day, Huber also failed to complete the run and was referred to Dr. Talusan for an additional medical examination. Dr. Talusan issued a report on February 16 stating that Huber appeared fit but suggesting further evaluation in light of Huber's breathing difficulties during the running exercises. On February 19, Huber took 13:02 minutes to complete the running exercise. On February 22, Huber again experienced difficulty in the exercises and had to use his inhaler.
 
 
 7
 Due to Huber's continuing problems and Dr. Talusan's suggestion for further examination, the County's Office of Personnel required Huber to report to his treating physician. On February 27, 1990, Huber's personal physician, Dr. James Kopper, a pediatrician,[1] responded in the Office's questionnaire that Huber "most likely" could perform the firefighting duties with medication but that he could not perform the duties without medication. He added that "if there is any further question regarding his capability--perhaps an evaluation by a pulmonologist or allergist would be appropriate." Joint Appendix (J.A.) 271.
 
 
 8
 On February 28, 1990, the Office of Personnel informed Huber that he could not carry his inhaler while participating in the fire academy. That day, Huber took 14:14 minutes to finish the 1.5 mile run, and the next day he stopped running after one mile, telling his instructor that his legs hurt but that he had no trouble breathing. On March 5, Huber stopped running, stating that he needed to clear his lungs; and on March 6, he stopped running during a 2.2 mile running exercise and finished eight minutes behind the average class time. During these training exercises, other recruits had difficulty finishing the 1.5 mile run in 13 minutes.
 
 
 9
 On March 1, 1990, the County referred Huber to Dr. Michael G. Hayes, the Director of Pulmonary Diseases at Maryland General Hospital. Dr. Hayes examined Huber on March 2 and issued a written opinion on March 8, which stated:
 
 
 10
 My impression is that Mr. Huber has significant bronchial asthma, which is not being very well controlled with medication.... Although I am unable to predict the course of his asthma, I can not honestly recommend that it would be safe for him or for the people that he worked with to have him function as a firefighter.... I strongly recommend that he not be hired as a firefighter.
 
 
 11
 J.A. 65. Dr. Hayes also submitted an affidavit for this proceeding, in which he stated that "based upon a reasonable degree of medical certainty," no medical plan or scheme would enable Huber to perform firefighting duties without a future risk of substantial harm to himself, his coworkers, or members of the public.
 
 
 12
 On March 12, 1990, the Director of DFRS informed Huber that he was proposing to the County to terminate Huber's employment. The Director did not propose Huber's dismissal because of his performance in the running exercises. Rather, the letter from the Director read, "As a result of a pulmonary evaluation requested by Howard County, it has been determined that you have a chronic medical condition that incapacitates you from the performance of your duties...." J.A. 278. After a hearing, the Director determined that Huber should be dismissed. The County advised Huber on March 19, 1990, of his dismissal and rights of appeal. Huber did not file an administrative appeal, and his termination became effective on March 23, 1990.
 
 
 13
 On February 25, 1993, Huber filed this action in federal district court in the District of Maryland, alleging that the County violated Sec. 504 of the Rehabilitation Act, 29 U.S.C. Sec. 794,[2] when it discharged him from his position as a firefighter recruit. In a motion to dismiss or, in the alternative, for summary judgment, filed on April 8, 1993, the County asserted that Huber's claim of discrimination was timebarred under the Maryland statute of limitations that the County argued applied. By memorandum and order dated August 4, 1993, the district court held that Huber's claim was not barred by limitations. See Huber, 849 F.Supp. at 415.
 
 
 14
 Huber thereafter obtained an additional medical opinion from a specialist in occupational medicine, Dr. James L. Gamble, III. In forming his opinion of Huber's condition, Dr. Gamble examined Huber on January 24, 1994, and considered Huber's medical history, including his hospitalizations occurring after his dismissal in 1990. In his assessment dated January 24, 1994, Dr. Gamble wrote:
 
 
 15
 I believe, however, that his long history of fighting fires without significant problems and his history of several day onset of asthma, however, provide evidence that accommodations could adequately protect him. The accommodations that I suggest are that the supervisors, who are all trained in auscultation, listen to him at the beginning of each work day of service. If they found wheezes, rhonchi or rales then he should be referred to their medical department, where further determination of his work status can be made. In addition, when he is exposed to smoke while fighting a fire and has to report to his rehabilitation center that the EMS technicians auscultate his lungs and again check for wheezes, rhonchis and rales. If he is found to have a problem, then he should again report to the firefighter's medical department for further evaluation. Therefore, within a reasonable degree of medical certainty, it is most improbable, that the patient would subject himself or others to injury as the result of his asthma with these accommodations.
 
 
 16
 J.A. 122 (strikeouts in original).
 
 
 17
 The parties filed cross motions for summary judgment on February 22, 1994. In an opinion dated April 15, 1994, the district court granted the County's motion for summary judgment. The court concluded as a matter of law that, within the meaning of the Rehabilitation Act, Huber was not otherwise qualified for the position of a career firefighter and the County did not unreasonably fail to accommodate Huber's disability. See Huber, 849 F.Supp. at 408-14.
 
 II.
 
 18
 This Court reviews the grant of summary judgment de novo, applying the same standard as the district court. Wagner v. Wheeler, 13 F.3d 86, 90 (4th Cir.1993). Under this standard, the facts and the inferences to be drawn from the facts must be viewed "in the light most favorable" to the nonmoving party. Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir.1985). At the same time, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).
 
 
 19
 Having considered the briefs and arguments of the parties, we adopt the reasoning of the district court concerning the merits of Huber's claim under Sec. 504 of the Rehabilitation Act. We therefore affirm the court's decision granting the County summary judgment for the reasons stated in the court's opinion below, Huber v. Howard County, Maryland, 849 F.Supp. 407 (D. Md.1994). We proceed only to address Huber's specific objections to the district court's decision that the court did not address in its opinion.[3]
 
 A.
 
 20
 First, Huber urges this Court to reverse the district court's summary judgment decision because the court violated Fed.R.Civ.P. 56(e) by relying on the County's affidavits, which were not based on the personal knowledge of the affiants. See Fed.R.Civ.P. 56(e);[4] Catawba Indian Tribe of South Carolina v. South Carolina, 978 F.2d 1334, 1342-43 (4th Cir.1992) (reasoning that summary disposition is improper if based on affidavits that lack an affirmative showing of the affiants' personal knowledge), cert. denied, 113 S.Ct. 1415 (1993). Huber specifically contends that the court should not have considered the affidavits from Dr. Hayes, former DFRS Director Richard Shaw, current DFRS Director James Heller, and Howard County Personnel Analyst Nancy Shull because their affidavits contained portions that were not based on their personal knowledge. Huber failed to raise this deficiency before the district court, and he has thus waived any claim that the affidavits are deficient under Rule 56(e), absent a gross miscarriage of justice. See DeCintio v. Westchester County Medical Ctr., 821 F.2d 111, 114 (2d Cir.) (stating that all the courts that have considered the issue have held that Rule 56(e) defects are waived on appeal when no motion to strike is filed below), cert. denied, 484 U.S. 965 (1987); Davis v. Sears, Roebuck & Co., 708 F.2d 862, 864 (1st Cir.1983); 10A C. Wright et al., Federal Practice and Procedure, Sec. 2738, 507-08 (2d ed.1983).
 
 
 21
 Such a gross miscarriage of justice would not occur in this case. First, accepting as true Huber's allegations of defect in the Shaw, Heller, and Shull affidavits, we do not find that they warrant a judgment contrary to the district court's decision granting the County's summary judgment motion. Excluding the portions of these affidavits that Huber alleges are not based on personal knowledge would not alter this Court's judgment because the allegedly inadmissible portions are immaterial and are superseded by information in the parties' agreed statement of facts.[5] Cf. Richardson v. Oldham, 12 F.3d 1373, 1378-80 (5th Cir.1994) (holding that errors under Rule 56(e) in considering or striking portions of affidavits at summary judgment were harmless); Wright, supra, at 468-69 (stating that the erroneous admission of an affidavit under Rule 56(e) does not require reversal of summary judgment if error is harmless). Furthermore, the allegedly inadmissible portions would not warrant reversing the district court because the court's opinion does not indicate that it significantly relied on the specific portions at issue. See New England Anti-Vivisection Soc'y, Inc. v. United States Surgical Corp., 889 F.2d 1198, 1204 (1st Cir.1989) (holding that Rule 56(e) error would be harmless because district court did not appear to rely on the affidavit at issue).
 
 
 22
 Second, contrary to Huber's contention, Dr. Hayes' affidavit does not violate Rule 56(e) because it is based on his personal knowledge gathered from analyzing Huber's medical records, reviewing a written description of the responsibilities of Howard County firefighters, personally taking a medical history from Huber, and conducting a physical examination of Huber. Huber argues that distinct portions of the affidavit fail to satisfy Rule 56(e) because Dr. Hayes relied on hearsay and on his characterization of firefighting duties, of which he did not have personal knowledge. Huber's allegations, however, do not demonstrate that Dr. Hayes' affidavit violates Rule 56(e). The parties do not dispute that Dr. Hayes is an expert witness, and the Federal Rules of Evidence provide special rules regarding the admissibility of the opinion testimony of experts. Although Rule 56(e) deficiencies in an affidavit are not remedied by resort to the Federal Rules of Evidence, Fed.R.Evid. 1101(b) makes the Federal Rules of Evidence generally applicable to all civil actions. We should therefore seek to reconcile the relevant rules so that they are not inconsistent. M & M Medical Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 165 (4th Cir.1992) (en banc) (reconciling Rule 56(e) and Fed.R.Evid. 705), cert. denied, 113 S.Ct. 2962 (1993).
 
 
 23
 Relevant to this case, Fed.R.Evid. 703 allows experts to base their testimony on data "made known to the expert," and "if of a type reasonably relied upon by experts in the particular field, ... the data need not be admissible in evidence." Reading this rule in tandem with Rule 56(e) affects the parameters of the Rule 56(e) "personal knowledge" requirement for expert witnesses. In order for the affidavit of an expert witness to satisfy Rule 56(e), the witness need not have observed or participated in the gathering of the data underlying his opinion. Rather, the personal knowledge requirement hinges on whether the expert personally analyzed the data that was "made known" to him and formed an expert opinion based on his own assessment of the data within his area of expertise. See Doe v. Cutter Biological, Inc., 971 F.2d 375, 385-86 & n. 10 (9th Cir.1992) (holding that experts testified based on facts within their personal knowledge because they testified concerning their area of expertise); Colgan v. Fisher Scientific Co., 935 F.2d 1407, 1423 & n. 15 (3d Cir.) (reasoning that expert need not have "eyewitness" account of underlying data in order for his affidavit to be based on personal knowledge), cert. denied, 502 U.S. 941 (1991).
 
 
 24
 We thus reject Huber's argument that Dr. Hayes' affidavit could not support a summary judgment motion because he relied on "hearsay" medical records and on information concerning the duties of Howard County firefighters. This data was properly "made known" to him, and he personally assessed the information in reaching his expert opinion regarding Huber's ability to perform the essential functions of a Howard County firefighter. Accordingly, we find that all of Huber's arguments alleging Rule 56(e) violations lack merit, and we conclude that rejecting these arguments does not result in a miscarriage of justice in this case.
 
 B.
 
 25
 Second, Huber argues that the district court improperly concluded that the County reasonably prohibited him from using his inhaler because the court failed to consider the fact that his medication comes in non-flammable forms, which would not cause a danger in a firefighting emergency. Huber contends that any concerns about explosions and similar dangers from the use of his inhaler are irrelevant because the County could have avoided such problems by instructing Huber to use non-flammable medication. We cannot rely, however, on the ability of these non-flammable forms to provide a reasonable accommodation because Huber has not presented evidence demonstrating that these other forms would effectively control his asthmatic symptoms.[6]
 
 
 26
 Even assuming that Huber's symptoms could be controlled by other forms of medication, Huber's own expert, Dr. Gamble, suggested that Huber could perform the duties of a firefighter only with certain accommodations, above and beyond his use of medication.[7] In analyzing Dr. Gamble's recommended accommodations, we must determine whether these accommodations are reasonable and would enable Huber to perform the essential functions of a firefighter without endangering the health and safety of himself, his coworkers, or the public. See 29 C.F.R. Sec. 1613.702(f) (defining an otherwise qualified disabled individual as one "who, with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others");[8] see also Pandazides v. Virginia Bd. of Educ., 13 F.3d 823, 833 (4th Cir.1994).
 
 
 27
 Huber asserts the district court improperly required him to prove that Dr. Gamble's accommodations protect against the mere possibility of future harm while he need only prove that the accommodations prevent "a probability of substantial injury." Appellant's Br. at 24. In this case, we need not determine whether Huber has proven that the accommodations enable him to perform the essential functions of a career firefighter without endangering himself or others because we agree with the district court's reasoning that Dr. Gamble's proposed accommodations are not reasonable and would cause undue hardship on the County.[9]
 
 III.
 
 28
 For the foregoing reasons, we affirm the decision of the district court.
 
 
 29
 AFFIRMED.
 
 
 
 [1]
 Huber was 21 years old at the time of his training
 
 
 [2]
 Section 504 of the Rehabilitation Act provides: "No otherwise qualified individual ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. Sec. 794(a)
 
 
 [3]
 On appeal, the County argues that the district court erred in concluding that claims in Maryland under Sec. 504 of the Rehabilitation Act are controlled by Maryland's general three-year limitations period codified in the Annotated Code of Maryland, Sec. 5-101 of the Courts and Judicial Proceedings Article. Relying on our decisions in Wolsky v. Medical College of Hampton Roads, 1 F.3d 222 (4th Cir.1993), cert. denied, 114 S.Ct. 881 (1994), and McCullough v. Branch Banking and Trust Co., 35 F.3d 127 (4th Cir.1994), cert. denied, 115 S.Ct. 1101 (1995), the County contends that the six-month limitations period provided in Sec. 9A(a) of Article 49B of the Annotated Code of Maryland should apply to Huber's claim. This six-month period covers the filing of administrative complaints of discrimination with the Maryland Human Relations Commission. Md.Code. Ann. art. 49B, Sec. 9A(a). We need not address this issue because we agree with the district court's reasoning that, under the terms of the Rehabilitation Act, Huber was not otherwise qualified for the position of a career firefighter and the County did not unreasonably fail to accommodate his disability. See Huber, 849 F.Supp. at 408-14
 
 
 [4]
 Rule 56(e) reads in pertinent part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e)
 
 
 [5]
 This Court need exclude only the portions of the affidavits that allegedly violate Rule 56(e) because on a motion for summary judgment, the district court should disregard only the inadmissible portions and should consider the remaining portions. Akin v. Q-L Investments, Inc., 959 F.2d 521, 530-31 (5th Cir.1992)
 
 
 [6]
 Dr. Kopper stated in his 1990 letter to the County that Huber "at times" has received oral medication since his treatment for asthma beginning at age 5. In an earlier note written in 1987, Dr. Kopper also stated that Huber's asthma was controlled with "oral medication and an inhaler." Neither statement creates a genuine issue as to whether Huber's current symptoms could be treated solely with oral medication, or other non-flammable forms. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) (holding that nonmovant must offer evidence on which jury could reasonably find for nonmovant)
 
 
 [7]
 Huber originally argued in his complaint that the County need accommodate him only by allowing him to use his medication. Dr. Gamble's report, however, indicates that Huber would need the suggested accommodations, in addition to medication, in order to perform the essential functions of a firefighter. By relying on Dr. Gamble's accommodations, Huber thus effectively undercuts his argument that he could perform the essential functions with medication alone. Nevertheless, Huber has not demonstrated that non-flammable forms of medication would sufficiently control his symptoms. See supra note 6
 
 
 [8]
 This regulation pertains to Sec. 501 of the Rehabilitation Act, which refers to the duty of federal, rather than federally funded, employers to accommodate the disabled. This health and safety requirement under Sec. 501, however, indicates the existence of such a requirement under Sec. 504. Chiari v. City of League City, 920 F.2d 311, 317 (5th Cir.1991); see also Carter v. Tisch, 822 F.2d 465, 467 n. 1 (4th Cir.1987) (relying on 29 C.F.R. Sec. 1613.702(f) in claim under Sec. 504)
 
 
 [9]
 Huber argues that the district court's using his record at the fire academy to predict Huber's need for extra disability days as a career firefighter was pure speculation and did not provide him with the view of the evidence in his favor. We find, however, that Huber's performance at the fire academy is highly relevant in predicting his readiness as a career firefighter. In contrast to his performance of his duties as a volunteer, Huber was obligated to perform the running exercises during the academy regardless as to whether he felt well each day. Moreover, the district court provided other reasons in its opinion, such as the County's need to provide extra firefighters to accommodate Huber's disability, which sufficiently demonstrate that Dr. Gamble's proposed accommodations would cause undue hardship on the County