**NAACP–MONTGOMERY METRO BRANCH, et al., Plaintiffs,**

v.

**CITY OF MONTGOMERY, et al., Defendants.**

No. Civ.A.95–D–1590–N.

United States District Court, M.D. Alabama, Northern Division.

July 2, 1999.

Order denying Attorney's fees, July 2, 1999.

Gordon, Silberman, Wiggins & Childs, Birmingham, AL, for plaintiffs.

Norman Gunter Guy, Jr., Montgomery, AL, David P. Whiteside, Jr., Birmingham, AL, Robert D. Segall, Montgomery, AL, J. Allen Schreiber, Birmingham, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendants' Motion For Summary Judgment ("Defs.' Mot."), filed on May 13, 1997. Defendants also filed a Brief In Support Of Motion For Summary Judgment ("Defs.' Br.") on the same date. Plaintiffs filed a Submission In Opposition To Motion For Summary Judgment, which the court construes as a Response ("Pls.' Resp."), on May 30, 1997. Defendants filed a Response To Plaintiffs' Opposition To Defendants' Motion For Summary Judgment, which the court construes as a Reply ("Defs.' Reply"), on June 17, 1997. After careful review of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendants' Motion For Summary Judgment is due to be granted.

## JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. §§ 1331, 1343, 1367, and 42 U.S.C. § 2000(e), et seq. The Parties do not contest personal jurisdiction or venue. .

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of

the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 56(c)). The mechanics of satisfying the initial burden vary, however, depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the nature of the parties' responsibilities when preparing or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 56(e)). In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

## FACTUAL BACKGROUND

Plaintiffs are black persons employed by or who applied for jobs with the City of Montgomery Fire Department ("Fire Department"). Defendants are the City of Montgomery ("City"), the Fire Department, and the Montgomery County–City Personnel Department ("Personnel Department"). The two issues before the court on summary judgment are: (1) the validity of the Fire Department's test used for promotion purposes, both as written and as applied; and (2) the claim of one Plaintiff, Ricky Johnson ("Johnson"), that Defendants retaliated against him by not promoting him because he refused to sign a settlement agreement.

In 1993, the City instituted a new method of assessing promotional candidates in the Fire Department. Departing from the traditional pen-and-paper test, the City utilized an Assessment Center to develop the test to be applied. In developing the test, the Assessment Center simulated various critical job performances that were required for promotion to certain positions in the Fire Department. Specifically, a job analysis was completed for the positions of District Chief, Fire Captain, Fire Lieutenant, and Fire Lieutenant–Medic. Subsequent to the job analyses, the critical duties of each position were identified. A test was developed focusing on those duties which were amenable to testing. The selection procedures were developed and reviewed by outside experts, who found that all requirements of the Uniform Guidelines on Employee Selection Procedures were met.

Pursuant to these procedures, the test would be administered, then a Register would be created, wherein each candidate would be ranked in order of his or her test results. When a position would become available, a group of the highest ranked persons would be selected, and those persons would be placed on a Certification List. Only names would appear on the Certification List; the candidates' Register rankings would not so appear. From the Certification List, the decision-maker would select a person to recommend, and final appointments would be made by the Mayor.

In 1995, Plaintiffs brought a suit against Defendants, alleging that Defendants discriminated against Plaintiffs on the basis of race with respect to training, job assignments, selection procedures, promotions, opportunities, transfers, and other terms, conditions and privileges of employment. (Am. Compl. at 4.) Specifically, Plaintiffs challenge the selection procedures employed by Defendants, which Plaintiffs claim "have the

design and purpose of excluding African–American applicants and employees for job positions, rather than the purpose of selecting the best qualified applicants." (*Id.*)

On October 15, 1996, Plaintiffs instructed their attorney to contact Defendants' attorneys to discuss settlement possibilities. Settlement discussions ensued, and Defendants' attorney sent Plaintiffs' Attorney a settlement letter on October 29, 1996. The terms of the settlement agreement were accepted by Plaintiffs' attorney, and Plaintiffs' attorney confirmed the agreement in writing by signing the October 29, 1996 letter in the space which said "Accepted and Approved" and returning the signed letter to Defendants. Defendants then prepared a Stipulation of Dismissal ("Stipulation") for all Parties to sign, as well as an Agreement and General Release ("Release") for each of the individually-named Plaintiffs to sign. These documents were tendered to Plaintiffs' attorney, together with checks paying certain costs of the action, on November 15, 1996. The checks were cashed by the payees.

Subsequently, Defendants learned that some of the Plaintiffs might not sign either the Releases or the Stipulation. Approximately two months after the checks were cashed, Defendants were informed that only five of the Plaintiffs had signed said forms.

One Plaintiff who did not sign the settlement agreement is Ricky Johnson ("Johnson"). Thereafter, in January 1997, Johnson took the Assessment Center test for Fire Lieutenant and ranked tenth on the Register. (Johnson Aff. at 1.) On March 21, 1997, two Certification Lists were prepared and presented to Chief R. Wayne Grier ("Grier") so that he could recommend two persons for the position of Fire Lieutenant. Plaintiff Johnson's name appeared on both lists, but Chief Grier selected a different person from each list, namely James B. Hart ("Hart") and Lyndon B. Turner ("Turner"). Both Hart and Turner had lower Register rankings that Johnson, although the rankings did not appear on the Certification Lists. Plaintiffs

allege that Chief Grier was well aware that Johnson ranked higher on the Register than both Hart and Turner when he made his recommendations.[1] Chief Grier's recommendations were approved, and Hart and Turner were appointed by the Mayor.

Settlement negotiations on March 20, 1997 led to the resolution of all issues in this action, save those addressed herein. Specifically, the following two issues remain before the court on summary judgment: (1) whether Defendants' selection procedures are valid; and (2) whether Defendants' failure to promote Plaintiff Johnson constitutes retaliation for his refusal to sign the Stipulation and Release. Because the court determines that summary judgment is due to be granted in favor of Defendants on both these issues, the court finds that the above-styled action is due to be dismissed.

## DISCUSSION

### I. *Validity of Defendants' Selection Procedures*

The first issue before the court is whether the selection procedures used by Defendants were valid and legal methods of examination for use as selection devices pursuant to the Uniform Guidelines on Employee Selection Procedures, as provided in 28 C.F.R. § 50.14 (1978) ("Uniform Guidelines"). Defendants proffer affidavits of experts who state that the examination procedures so comply and are "valid" pursuant to the Uniform Guidelines. (*See* Affidavits of Barbara M. Montoya and John Hicks). Plaintiffs' opposition to Defendants' motion for summary judgment on the selection procedures' validity is twofold. First, Plaintiffs argue that the affidavits submitted by Defendants are not admissible, and, therefore, the issue of whether the test as written was valid is not appropriate for summary judgment. Second, Plaintiffs contend that, even if the test as written was valid, the manner in which the test was applied was discriminatory. The court is not persuaded by either argument.

---

[1]. The court notes that Defendants vigorously contest whether Chief Grier had such knowledge, but for the purposes of this Opinion, the court construes, as it must, the facts in the light most

favorable to the non-moving party. *See Adickes*, 398 U.S. at 157, 90 S.Ct. 1598. The court further notes that Hart, who was promoted in lieu of Plaintiff, is black.

First, Plaintiffs claim that "[t]he evidence offered regarding the validity of the Assessment Center is inadmissible under Rule 56, Federal Rules of Civil Procedure, because it is opinion evidence on the ultimate issue, rather than an affidavit 'on personal knowledge' as required by the Rule." (Pls.' Resp. at 3). Therefore, claim Plaintiffs, the validity of the tests is not an issue appropriate for determination on summary judgment. The court disagrees.

■ Rule 56 provides, in relevant part, that "[s]upporting and opposing affidavits shall be made on personal knowledge...." Fed.R.Civ.P. 56(e). In the context of an affidavit proffered by an expert, "the witness need not have observed or participated in the gathering of the data underlying his opinion. Rather, the personal knowledge requirement hinges on whether the expert personally analyzed the data that was 'made known' to him and formed an expert opinion based on his own assessment of the data within his area of expertise." *Huber v. Howard County, Md.,* 56 F.3d 61, No. 94–1651, 1995 WL 325644, at *5 (4th Cir. May 24, 1995) (citing *Doe v. Cutter Biological, Inc.,* 971 F.2d 375, 385–86 & n. 10 (9th Cir.1992); *Colgan v. Fisher Scientific Co.,* 935 F.2d 1407, 1423 & n. 15 (3d Cir.1991)).

■ Defendants proffer the affidavits of Ms. Montoya and Dr. Hicks in support of their assertion that the selection procedure was valid and satisfied the requirements of the Uniform Guidelines. Plaintiffs do not contest that Ms. Montoya and Dr. Hicks are expert witnesses. Therefore, the court applies the above-delineated test for expert affidavits to determine whether their affidavits are admissible.

Ms. Montoya's affidavit clearly sets forth the facts on which she bases her opinion. It is apparent to the court that Ms. Montoya analyzed data "made known" to her in reaching this conclusion, and Plaintiffs present no evidence to the contrary. Therefore the court finds Ms. Montoya's affidavit to be admissible. Further, Dr. Hicks' affidavit states that he has "personal knowledge" of "every stage of the construction and validation of the assessment centers for use in promotions in the Montgomery Fire Depart-

ment." (Hicks Aff. at 1, 2.) Thus, the court finds that Dr. Hicks' affidavit satisfies the personal knowledge requirement of Rule 56 for both expert and lay witnesses and, accordingly, is admissible. Because Plaintiffs' sole challenge to the validity of the test as written is their challenge to the admissibility of these two affidavits, and because the court finds both affidavits to be admissible, the court finds that no issue of fact exists concerning the validity of the test as written, and that summary judgment is due to be granted on this issue.

■ Second, Plaintiffs contend that the manner in which the selection procedure was administered is disputed and, therefore, summary judgment is not appropriate. (Pls.' Resp. at 4.) Plaintiffs claim that "defendants have not carried their exacting initial burden to show that there are no genuine disputes regarding disparities in the available training and preparation, regarding security, and regarding disparities in grading." (Pls.' Resp. at 4.) The court finds, however, that Defendants have satisfied their initial burden in this regard, and, pursuant to Rule 56, the burden shifts to Plaintiffs to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Plaintiffs provide only bald assertions with no factual allegations on this issue. Thus, the court finds that Plaintiffs have failed to satisfy their burden. Accordingly, the court concludes that summary judgment is due to be granted on the issue of the validity of the Assessment Center test as applied.

## II. *Plaintiff Johnson's Retaliation Claim*

Defendants move for summary judgment on Plaintiff Johnson's retaliation claim, asserting that "the selection of James B. Hart and Lyndon B. Turner, in lieu of Ricky L. Johnson, was not retaliation for Ricky L. Johnson's participation in the lawsuit." (Defs.' Mot. at 2.) Plaintiff Johnson contests Defendants' assertion, claiming that "the motivation for the selection of two lower ranking officers rather than Plaintiff Johnson is in genuine dispute." (Pls.' Resp. at 5.) As detailed below, the court finds that summary judgment on this issue is due to be granted

because Defendants demonstrate a legitimate, non-discriminatory reason for their selection, and Plaintiff Johnson fails to demonstrate that such reason was pretextual.

■ To establish a prima facie case of retaliation, a plaintiff must demonstrate that: (1) he or she engaged in statutorily protected expression; (2) there was a subsequent adverse employment action; and (3) there is a causal link between the protected expression and the adverse action. *See Meeks v. Computer Assoc. Int'l,* 15 F.3d 1013, 1021 (11th Cir.1994). "Once the plaintiff establishes a prima facie case, the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse employment action. (Citation omitted.) If this burden is satisfied, the plaintiff must then show that the employer's proffered reason is a pretext for retaliation." *Merriweather v. Alabama Dep't of Pub. Safety,* 17 F.Supp.2d 1260, 1267 (M.D.Ala.1998).

■ Plaintiff Johnson asserts that he was not promoted because he refused to sign both the Stipulation and the Release. The court assumes that Plaintiff Johnson has established a prima facie case for retaliation, and the burden shifts to Defendants to provide a legitimate, non-discriminatory reason for their actions. The court notes that "the employer's burden is exceedingly light." *Meeks,* 15 F.3d at 1021. Defendants claim that the promotion decision was made pursuant to the selection procedures and the resulting Register rankings. Pursuant to the selection procedures, when a position becomes available, the decision-maker is given a Certification List of eligible candidates, which list is created from the Register. The names on the Certification List are not ranked, however, and all persons on the Certification List are viable candidates for selection. Chief Grier was the person to recommend who would be promoted. The persons he recommended appeared on the list, and he based his decision "purely on merit and knowledge of all the individuals who were certified to me." (Grier Aff. at 3.) The court finds this explanation to satisfy Defendants' "exceedingly light" burden.

■ Next, Plaintiff Johnson "must then demonstrate that [Defendants'] proffered explanations are a pretext for retaliation." *Id.* (citation omitted). Regarding this burden, the Eleventh Circuit has stated:

> The burden to avoid summary judgment is not to show by a preponderance of the evidence that the reasons stated were pretext. Rather, plaintiff's burden at summary judgment is met by introducing evidence that could form the basis for a finding of facts, which when taken in the light most favorable to the non-moving party, could allow a jury to find by a preponderance of the evidence that the plaintiff has established pretext, and that the action taken was in retaliation for engaging in the protected activity.

*Hairston v. Gainesville Sun Publ'g Co.,* 9 F.3d 913, 921 (11th Cir.1994). Plaintiff Johnson claims that the two persons promoted in lieu of Johnson were not ranked as high as Johnson, that Chief Grier, who made the selection decision, was aware of the rankings, that Chief Grier was aware of Johnson's participation in this lawsuit, and that Chief Grier knew that Johnson had not executed the Stipulation and Release at the time the selection decision was made.

The court is not persuaded that Plaintiff Johnson presents evidence sufficient to allow a jury to find by a preponderance of the evidence that Plaintiff Johnson has established pretext. First, all names to appear on the Certification List are eligible for promotion. In fact, the Certification List explicitly states: "the names of the following persons who are eligible for appointment are hereby certified." (Grier Aff. Ex. 1.) Plaintiff Johnson fails to show that, of the names on the Certification List, the higher-ranked persons must be selected first. Indeed, it appears to the court that once the Certification List is created, all names appearing thereon are considered equal in terms of their rankings. Thus, the court finds nothing circumspect concerning the fact that Johnson was ranked higher on the Register than Hart and Turner.

Second, although Plaintiff Johnson alleges that he was more qualified than either Hart or Turner, Plaintiff Johnson fails to demon-

strate how he was more qualified, beyond the fact that he had a higher ranking on the Register. Thus, Plaintiff Johnson has presented nothing to rebut Chief Grier's statement that he made his selections from the Certification List based on his knowledge of each candidate's merit.

Finally, the court considers Plaintiff Johnson's contention that Chief Grier was well-aware of their respective Register rankings. The court finds that this knowledge alone does not suffice to overcome summary judgment on this issue.

Therefore, construing the facts in the light most favorable to Plaintiff Johnson, the court finds that Plaintiff Johnson has failed to meet his burden of demonstrating that a jury could find by a preponderance of the evidence that Plaintiffs have established pretext, and that the action taken was in retaliation for Johnson's failure to sign the Settlement and Release. Accordingly, the court finds that Defendants' Motion For Summary Judgment is due to be granted.

### ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Defendants' Motion For Summary Judgment be and the same is hereby GRANTED, and that the above-styled action be and the same is hereby DISMISSED.

It is further CONSIDERED and ORDERED that the following outstanding motions be and the same are hereby DENIED AS MOOT:

(1) Defendant Personnel Department's Motion For Entry Of Protective Order, filed June 3, 1996; and

(2) Defendants' Motion To Enforce Settlement Agreement, filed February 3, 1997.

### ORDER

Before the court is Defendant City of Montgomery's ("City") Motion For Attorneys' Fees To Be Recovered From The NAACP–Metro Montgomery Branch ("Motion For Attorneys' Fees"), filed July 17, 1996. NAACP–Metro Montgomery Branch ("NAACP") filed a Showing Of Good Cause Why Defendant City's Motion For Attorneys' Fees Should Not Be Granted on August 7, 1996.

Under 42 U.S.C. § 1988, a court has the discretion to award attorneys' fees to the prevailing party. 42 U.S.C. § 1988. Defendant City's request for attorneys' fees is governed by the factors enunciated in the Supreme Court's decision in *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). There, the Supreme Court held that fees could be awarded to a prevailing defendant when "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.* at 421, 98 S.Ct. 694. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that NAACP's claims were not "frivolous, unreasonable, or without foundation." *Christiansburg*, 434 U.S. at 421, 98 S.Ct. 694.

Accordingly, it is CONSIDERED and ORDERED that Defendant City's Motion For Attorneys' Fees be and the same is hereby DENIED.